UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.G. EDWARDS & SONS, INC., et al. | ) ) ) | |
| Applicants | ) ) | |
| vs. | ) ) | Case No. 4:05MC245 HEA |
| MICHAEL FERMAN, | ) ) | |
| Respondent. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the Application for Confirmation of Award of Arbitrators [# 1] filed by applicants A.G. Edwards & Sons, Inc., A.G. Edwards, Inc., the Compensation Committee of A.G. Edwards & Sons, Inc., the Plan Administrator for the A.G. Edwards, Inc. Excess Profit Sharing Deferred Compensation Plan, and the Plan Administrator of the A.G. Edwards, Inc. 1988 Incentive Stock Option Plan 2002 Restatement (the Edwards Defendants), and Respondent's Motion to Vacate Award of Arbitrators and Objections to Motion to Confirm Arbitration Award, [# 5]. The parties have filed their respective oppositions to each of these pleadings. For the reasons set forth below, the Application for Confirmation is granted and the Motion to Vacate is denied.

Respondent instituted an action seeking this Court's intervention in an ongoing

arbitration proceeding. Certain defendants in that action filed a motion to dismiss. The matter was therefore dismissed.

The Edwards Applicants have filed this action seeking to confirm the arbitration award which was rendered subsequent to the dismissal of the previous action. Respondent seeks to vacate the award on the ground that the award was procured by undue means. 9 U.S.C. §10(a).

## **Facts and Background**

The parties herein agreed to arbitrate a dispute which arose with respect to Ferman's employee benefit plans. Ferman filed his claim on April 23, 2003. The award in Edwards' favor was rendered on April 5, 2005.

After presentation of evidence and prior to Edwards' closing argument in the arbitration, counsel for Edwards raised an objection as to the impartiality of one of the three arbitrators, Chairman Walters. Counsel voiced her concern that Walters might be bias with regard to Edwards.

At the conclusion of the hearing, Walters voluntarily recused himself from the panel. Walters set forth his reasoning on the record:

> Thank you both. I think at this time it is appropriate for me to go on the record for just a moment. At the very beginning of this hearing, I read standard language from the NASD that if any matter comes to the attention of this panel during and in connection with this panel's participation in this proceeding that either from the record or from the material or communications related to this proceeding that the panel has reason to believe may constitute a violation of the Association's

rules or the Federal Securities Law, this panel may initiate a referral of the matter to the Association for disciplinary investigation.  If we make any such referral, it will only be initiated after this dispute has been either settled or otherwise disposed of or after a final award has been rendered.  I believe that the testimony of Mr. Kelly and Ms. Wrigley, her initial testimony raise an issue with regard to the Association's rules regarding the CRD and the use of information contained in the CRD.  But I would emphasize that in none of our conversations have we ever said we were going to make such a proposal or a referral under this provision.  Nonetheless, I think it is clear from what I just read that it is always the duty of the members of this panel to make inquiry when they believe such action may have occurred.

\*	\*	\*	\*	\*	\*	\*	\*	\*	\*	\*	\*

Counsel has place me in a unique position, one that I have not had the occasion to observe before, nor do I know that anyone at the NASD knows what to do.  Counsel has put me in a position that where if this panel were to render an award for claimants of any type on this basis, it would be subject to the challenge she raised in her points [in] the beginning of the argument.  Likewise, however, if this panel were to rule in favor of respondents, the claimants could claim that I as Chairperson influenced the panel to rule in that regard to bend over backwards to refute her arguments.  So I am in a position that I think is unwarranted, and I am unsure in my own mind why respondent's counsel waited until this point in time to bring this up because if she felt that I was prejudiced in this matter, it seemed to me that time would have been either after Mr. Kelly's appearance on the stand or at the end of that day or at the end of the day yesterday or at some point prior to closing argument.  Now, I am not assigning to counsel any bad faith argument that she raised it at this point to subvert the panel.  I'm not charging that, but I find it unusual that it was not raised until this point.  I think the only thing that I can do is withdraw from this case right now and not take this case any further.  My understanding form having been in a situation where an arbitrator withdrew previously is that the parities may request another hearing through the NASD.  But I do believe that the way my integrity was challenged, which has never been done before in 20 years in this industry and being on the NASD District Business Conduct Committee and having served as an

arbitrator in many cases and having testified to the New York Stock Exchange and working with all the state Securities Commissioners never had such an attack on my integrity before, I am of the position that that's the only thing I can do. And therefore, I am withdrawing from the case effective now. And I would suggest probably you'd need to take a break.

Subsequent to Walter's withdrawal, the parties were notified by a letter from the NASD dated November 10, 2004, that they were to advise the NASD whether they wished to proceed with the remaining two arbitrators. The letter further advised that if the parties did not agree to proceed with the remaining arbitrators, the NASD would appoint a replacement arbitrator and the panel would then decide whether a new hearing would be scheduled.

Edwards objected to maintaining the entire panel after Walter recused himself. Edwards requested that the entire panel be replaced, and specifically argued that Walter's statements might unduly influence another arbitrator, Mr. Melichar.

Ferman responded to the NASD by urging that Edwards' objection to Walter was procedurally improper; that the objection was untimely; that the evidence adduced by Ferman during the hearing presented issues of bad faith; that Edwards acted in bad faith in its objection and by exerting influence as a member of NASD; and requested sanctions against Edwards. Ferman also filed a Motion for Sanctions

on November 12, 2004 and requested that the NASD Dispute Resolution or the Panel award him judgment as prayed.

The NASD did not remove the two remaining arbitrators, rather, it appointed a third arbitrator. Edwards requested that the new arbitrator not be permitted to read Walter's comments he made on the record. The request was refused.

On April 5, 2005, the three arbitrators entered an Award in favor of Edwards and against Ferman. Edwards now seeks to confirm the Award; Ferman seeks to have the Award vacated.

## **Discussion**

The Eighth Circuit Court of Appeals has discussed the deference to be given to an arbitration award, and the situations in which a district court can modify, vacate or correct an arbitration award. Judicial review of an award is extremely limited. "[R]eview of an arbitration award under the Federal Arbitration Act is exceedingly limited and deferential. Section 10(a) of the Act provides four statutory grounds for vacating an award. *St. John's Mercy Medical Center v. Delfino*, 2005 WL 1618787 (8th Cir. July 12, 2005).

When reviewing an arbitral award, courts accord "an extraordinary level of deference" to the underlying award itself, *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471,* 80 F.3d 284, 287 (8th Cir.1996), because federal courts are not authorized to reconsider the merits of an arbitral award "even though

- 5 -

the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B,* 284 F.3d 821, 824 (8th Cir.2002) (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36 (1987)). An award must be confirmed even if a court is convinced the arbitrator committed a serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Bureau of Engraving,* 284 F.3d at 824 (quoting *Misco,* 484 U.S. at 38).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, established "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).; *Bob Schultz Motors, Inc. V. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 724 (8th Cir. banc 2003). Thus, the FAA only allows a district court to vacate an arbitration award:

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

matter submitted was not made.

9 U.S.C. § 10(a); *Manion v. Nagin,* 392 F.3d 294, 298 (8th Cir. 2004).

A "district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." *Legion Ins. Co. v. VCW, Inc.,* 198 F.3d 718, 721 (8th Cir.1999). The deference owed to arbitration awards, however, "is not the equivalent of a grant of limitless power," *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674,* 916 F.2d 63, 65 (2d Cir.1990), and "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." *Matteson v. Ryder Sys. Inc.,* 99 F.3d 108, 113 (3d Cir.1996). Thus, courts may also vacate arbitral awards which are "completely irrational" or "evidence[ ] a manifest disregard for the law." *Hoffman v. Cargill Inc.,* 236 F.3d 458, 461 (8th Cir.2001) (internal quotations and citations omitted); *Stark v. Sandberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793, 798-99 (8th Cir.2004).

Further, the court notes, however, " 'arbitrators are not required to elaborate their reasoning supporting an award'...." *Stark v. Sandberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793, 802 (8th Cir.2004), cert. denied, --- U.S. - - - - , 2005 WL 544104 (Apr. 25, 2005) *and cert. denied,* --- U.S. - - - - , 2005 WL 282139 (May 2, 2005) (quoting *El Dorado Sch. Dist. # 15 v. Cont'l Cas. Co.,* 247 F.3d 843, 847 (8th Cir.2001)).

Ferman urges the Court to vacate the Award under subsection (1) of Section 10(a). Ferman argues that Edwards exerted undue influence through counsel's objection regarding Walter's impartiality, and through intimidation of the remaining panelist after the conclusion of the hearing. In support of his position, Ferman focuses on Walter's comments during the hearing that the objection was "unwarranted," "unusual," and an "attack" on his integrity. From this, Ferman argues that Edwards' conduct was "calculated and deliberate in its timing" to use its influence by this maneuvering. Ferman also argues that Edwards' alleged "undue influence" continued seven days after the close of the arbitration hearing when Edwards moved for the removal of the remaining panelists.

While Ferman may honestly believe that Edwards' objection to Walter was "calculated" and a deliberate attempt to manipulate the outcome of the hearing, without more, Ferman's position is rank speculation. By the same token, it could be speculated that counsel made the objection when she did because it simply just occurred to her at that time. As Walter himself noted, he did not believe that counsel's timing or comments were attributable to a bad faith attempt to influence the panel. Likewise, once Edwards believed Walter may be bias, that belief could carry over to the remaining panelists after Walter's recusal. Again, without more to substantiate the charge, the Court is not convinced that a member of the bar would

deliberately challenge a panelist solely because she feared the outcome of the hearing would result in an Award against her client.

The Eighth Circuit has discussed and outlined the meaning of "undue means":

> The term "undue means" must be read in conjunction with the words "fraud" and "corruption" that precede it in the statute. *See Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978). Consistent with the plain meaning of fraud and corruption, and with the limited scope of judicial review of arbitration awards, other circuits have uniformly construed the term undue means as requiring proof of intentional misconduct. *See American Postal Workers Union, AFL--CIO v. United States Postal Serv.,* 52 F.3d 359, 362 (D.C.Cir.1995) (undue means limited to conduct "equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator"); *A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1403 (9th Cir.1992) (undue means "connotes behavior that is immoral if not illegal"), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 126 (1993); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 108 (N.D.Ill.1980) (" 'undue means' requires some type of bad faith in the procurement of the award"), *aff'd,* 653 F.2d 310 (7th Cir.1981). Undue means does not include "sloppy or overzealous lawyering." *Edwards,* 967 F.2d at 1403. In an unreported case, the Sixth Circuit applied this strict standard in rejecting a claim that a party used undue means to prevail in a discovery dispute before the arbitrators. *See Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.,* 1 F.3d 1241, 1993 WL 288301 at *5 (6th Cir.1993). We agree with those decisions.

*PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 991 (8th Cir. banc 1999)., reh'g and reh'g en banc denied, (Oct. 19, 1999) and *cert. denied,*

529 U.S. 1020 (2000). Clearly, the actions alleged to constitute "undue influence" in this matter do not rise to the level articulated by the Eighth Circuit and other courts construing the phrase.

## Conclusion

Under the deferential standard of review that this Court must utilize, and in consideration of the record before the Court, the Award in favor of Edwards and against Ferman was not procured by undue means. As such, Ferman's Motion to Vacate the Award must be, and is, denied. Edward's Motion to Confirm Arbitration Award is granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Application of Confirmation of Award of Arbitrators, [# 1], is granted.

**IT IS FURTHER ORDERED** that the Motion to Vacate Award of Arbitrators, [# 5], is denied.

Dated this 8th day of August, 2005.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE